**NOEL et ux. v. PANHANDLE BUILDING & LOAN ASS'N et al.**

No. 4451.

Court of Civil Appeals of Texas. Amarillo.

June 17, 1935.

Rehearing Denied Sept. 9, 1935.

Otis Trulove, of Amarillo, and Willis, Studer & Studer, of Pampa, for appellants.

Morgan, Culton, Morgan & Britain and Gibson & Sutton, all of Amarillo, for appellees.

JACKSON, Justice.

The appellants, J. L. Noel and wife, Ethel M. Noel, prosecute this appeal from a judgment obtained by the Panhandle Building & Loan Association, a Texas corporation, against him for $2,596.76, with interest and costs, and for the foreclosure of a lien securing the payment of said sum on lot 10 in block 1 of the Park Hill addition to the city of Pampa against both appellants.

Usury is the defense relied on and is based, as stated in their brief, on the contentions: "That the structural plan of the association in its loan contract comprehended usurious interest; that the association and its officers entered into a conspiracy in pursuance of which they had an agency in Pampa which habitually charged a commission which was a guise for usury; that the contract * * * was void for ambiguity; * * * that the whole scheme, devise or plan of the contract was one to cover up usury; * * * that the statutes authorizing the charging of more than ten per cent are unconstitutional and void."

The record shows that appellee was, as its name indicates, a building and loan association, organized and operated under title 24 of the Revised Civil Statutes of Texas (Vernon's Ann. Civ. St. art. 852 et seq.), and the loan contract involved was such as is authorized by the provisions of the articles of said statute.

That on May 1, 1929, the appellants executed and delivered to appellee their promissory note for $2,750, by the terms of which they promised to pay to the association, at its office in Amarillo, Tex., "the sum of Thirteen and 75/100ths ($13.75) Dollars per month, the same being monthly dues on 27½ shares of the installment stock of said association, as evidenced by Certificate No. 2572 hereby pledged to said association to secure the payment of this note, and also the sum of Twenty-two and 91/100ths ($22.91) Dollars per month, the same being interest due monthly upon said sum so borrowed, together with all fines chargeable according to the by-laws of said association upon arrears of such payments. And we promise to pay said association all of said sums of money, amounting in the aggregate to Thirty-six and 66/100ths ($36.66) Dollars per month on the 10th day of each and every month until all of said shares shall reach the aggregate value of $2750.00, or said loan shall be otherwise cancelled or discharged. * * *

"A default in the payment of any monthly installment of interest on this note, or any monthly installment of stock dues on said stock, for four months after same becomes due, shall, at the option of the holder hereof, render the principal of this note due and payable immediately."

The note also provides for the payment of taxes and insurance, and contains the usual stipulation for attorney's fees.

On the same day the appellants executed their deed of trust to secure the payment of the note, which, after describing the terms of said note, contains this provision: "Should default be made in the payment of any of the sums of money mentioned in the above note hereby secured according to the terms and provisions thereof, or should any of the conditions not be complied with in the manner provided for, then the debt hereby secured and all other sums herein or in said note provided to be paid shall at the option of said association become and be at once due and payable."

The deed of trust for such default authorized the sale of the lot, and provides that the proceeds thereof shall be applied first to the payment of the cost and expense of executing the trust, second to all sums of money due by the terms of the note, together with all interest, stock dues, fines, and attorney's fees accrued, taxes, insurance, and other charges, and the remainder to the appellants.

Through the office of Mr. Fraser, who was engaged in the insurance business where he resided in Pampa, Tex., prospective borrowers for loans were solicited and applications for loans were made out and forwarded to the Panhandle Building & Loan Association at Amarillo, Tex. Neither Mr. Fraser nor any one connected with his office was a general agent, officer, or director of the loan association, and

none of them had authority to make or approve a loan. The application of the borrower for such loan, when received at the office of the loan association, was approved or rejected by its officers. If approved, an abstract was demanded of and furnished by the applicant and examined by the attorneys of the association. If the title was satisfactory, they prepared all papers for the loan, sent them to Mr. Fraser, together with a check of the loan association for the amount of the loan, and through his office such papers were executed, recorded, placed in the abstract, and the check duly delivered to the borrower, who paid a commission of 2 per cent. of the amount of the loan to the party handling the transaction for him. The loan association knew that such commission was charged, but received no part thereof.

The appellants, by several assignments, complain of the action of the court in directing a verdict against them, contending that there were fact issues for the jury relative to whether the appellee maintained an agency in Pampa with authority to make loans for it; whether the commission paid by the borrower was a part of a scheme or device to charge interest on the loan; and whether the abstract, attorney, appraisal, and membership fees, dues, and penalties were received and charged as compensation for the use of money.

█ It is undisputed that Mr. Fraser and his associates had no authority from the appellee to make any loan; that appellee received none of the commission paid; that the negotiations for the loan began between the appellants and Mr. Park, who was associated with Mr. Fraser, therefore, if such agency was maintained, its authority was not general, but special and limited.

"The act of an agent, having only special and limited authority, in charging the borrower a fee by way of a commission for making a loan, or for examining title to property to be mortgaged to secure the amount of the loan, is not the act of his principal, and the fee so charged does not render the loan usurious. * * *

"His authority extended no further than that of receiving and forwarding applications for loans, delivering moneys actually lent, and collecting and remitting installment payments from the borrower. He had no authority whatever to make loans, to pass upon risks, or appraise securities, for appellee." Hughes et ux. v. Security

Bldg. & Loan Ass'n (Tex. Civ. App.) 62 S.W.(2d) 219, 220.

The record is conclusive that there was no agreement between appellants and appellee for the payment of a commission. J. L. Noel testified that he had no agreement with Mr. Fraser or any of his associates for the payment of the commission, about which nothing was said until the check was ready to be delivered.

In Continental Savings & Bldg. Ass'n v. Wood (Tex. Civ. App.) 33 S.W.(2d) 770, 771, 772, although it conclusively appears that the loan company paid "through its general manager to Kendrick-Thompson Agency as a commission or brokerage fee for negotiating the loan, making the amount paid said agency for its services $135," the court held that in the absence of an agreement to pay such commission, the contract was not usurious. This holding by the Eastland Court of Civil Appeals, speaking through Chief Justice Hickman, was approved by the Supreme Court. Wood v. Continental Sav. & Bldg. Ass'n, 56 S.W.(2d) 641.

In Hatcher v. Continental Southland Savings & Loan Ass'n (Tex. Com. App.) 80 S.W.(2d) 299, 303, the appellants Hatcher and wife alleged:

"That at the time of the making of said loan the defendant had working for them as their agents in Hale County, a partnership composed of J. P. Flake and Barney Rushing, operating under the name of Flake & Rushing, who made loans for them in Hale County, who had a contract of agency with the defendants. That at the time of the signing of the contract involved in this case the plaintiffs and defendants had an agreement made and entered into with the defendant through their agents, that the plaintiffs would pay to the defendant a commission equal to the first six monthly payments less the interest for that time, one-half of which would be retained by the defendants themselves and one-half of which would be paid to the agents Flake and Rushing for making the loan. * * *

"That the said Flake and Rushing made a charge of two and one-fourth per cent on the amount of the loan, which charges were made as agents of the defendants in making said loan, and which was paid by plaintiffs, all of which was done at the special instance and request of the defendants, and with their knowledge and con-

sent. That said charge, though denominated brokerage fees, was in reality money paid by the plaintiffs to the defendants for the use, forbearance and detention of money, and which fees were in excess of the ten per cent per annum stipulated for in said deed of trust and note, which was more than ten per cent per annum, and rendered the contract void and of no effect as to interest."

A general demurrer was sustained to the petition by the trial court, and in certifying such ruling to the Supreme Court its attention was directed to the allegations pertaining to the payment of commissions. The Supreme Court held the facts so alleged were insufficient to constitute usury, and that the general demurrer was correctly sustained. These contentions are overruled.

■ The above authorities, together with Hampton et ux. v. Guaranty State Bldg. & Loan Ass'n (Tex. Civ. App.) 63 S.W. (2d) 873; Walker et al. v. Temple Trust Co. (Tex. Com. App.) 80 S.W.(2d) 935, are conclusive against appellants' contention regarding the payment of abstract, attorney, appraisal, and membership fees, dues, and penalties, the constitutionality of the statutes providing for the creation and organization of building and loan associations, and the alleged usurious stipulations of the contract.

After an investigation of the pleadings, the testimony, and the judgment, we are of the opinion that none of the other assignments urged by appellants present reversible error.

The judgment is affirmed.